UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

JANELLE ARMENDARIZ,

Plaintiff,

v.

CHILDREN'S LEARNING ADVENTURE EE, LLC,

Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Janelle Armendariz ("Plaintiff"), by and through her attorneys, HKM Employment Attorneys, LLP, for her Complaint and Jury Demand against Children's Learning Adventure EE, LLC (the "Company" or "Defendant"), states and alleges as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff brings this action to recover damages arising from Defendant's retaliatory employment practices that culminated in Plaintiff's demotion and termination only days after Plaintiff engaged in the protected activity of participating in investigations concerning reports of sexual harassment and opposing what she reasonably believed to be illegal sexual harassment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

### PARTIES

2.      Janelle Armendariz is, and at all times relevant to this Complaint was, a resident of Colorado.

1

3.        Defendant Children's Learning Adventure EE, LLC is, and at all times relevant to this Complaint was, an Arizona limited liability company with a principal office street address located at 14631 North Scottsdale Road, Suite 200, Scottsdale, Arizona 85254.

## JURISDICTION AND VENUE

4.        Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

5.        This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

6.        Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

7.        Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

8.        Plaintiff filed her Charge of Discrimination Numbers 32A-2019-00119 and FE2019960123 with the Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division ("CCRD"), respectively, for retaliation against Defendant on or about November 2, 2018.  Plaintiff was issued a Notice of Right to Sue with respect to the above Charge Numbers and Plaintiff filed the present action within ninety (90) days of receipt of same.

9.        All administrative prerequisites have been met prior to filing this action.

## FACTUAL ALLEGATIONS

10.        Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

11.     Defendant is a provider of childcare services for children aged 6 weeks to 5 years, with before and after-school care for children up to age 13.  The Company also provides holiday and summer camp services for these age groups.

12.     Plaintiff began working for Defendant on or about August 7, 2017 as its Office Assistant.  As Defendant's Office Assistant, Plaintiff was a member of Defendant's management.

13.     At all relevant times during her employment with Defendant, Plaintiff performed her job duties satisfactorily or better.  For instance, Plaintiff had never been informed of any verbal or written discipline from Defendant, or any alleged performance issues, until after Plaintiff's protected opposition to sexual harassment, beginning the week of September 3, 2018.

14.     Plaintiff had been out from work on approved medical leave from August 7, 2018 to September 3, 2018.

15.     When Plaintiff returned to work the week of September 3, 2018, Plaintiff witnessed and received reports of inappropriate comments and conduct of a sexual nature by one of the Company's managers, Jennifer Stone.

16.     For example, during the week of September 3, 2018, Plaintiff witnessed Ms. Stone say, while referring to Defendant's Enrollment Specialist, Hosnah Safi, that "if she wasn't straight, I would f*ck her."  Ms. Stone made this comment in the presence of both Plaintiff and Defendant's Director, Chelsea Hamilton.  Ms. Hamilton, rather than taking appropriate corrective action upon hearing Ms. Stone's comment, simply laughed.  When Ms. Stone left the room, Plaintiff told Ms. Hamilton that it was not appropriate for Ms. Stone to make comments of that nature.  Ms. Hamilton responded dismissively toward Plaintiff's first protected report opposing sexual harassment.

17.     Soon after, two female employees of Defendant's, Erica Mora (Teacher Assistant—

Infants) and Crystal Smith (Lead Teacher—Toddlers), told Plaintiff that Ms. Stone had told Ms. Mora that she "wanted to have a threesome" with Ms. Mora and Ms. Smith. Plaintiff was also told that Ms. Stone had told Ms. Smith that she had "a nice butt" and "a nice waistline." Both Ms. Smith and Ms. Mora told Plaintiff that these comments had made them feel uncomfortable, but that they did not want to report the comments to Ms. Hamilton because they felt that Ms. Hamilton had a close friendship with Ms. Stone.

18.    Plaintiff was also told that Ms. Stone had made the same comment about wanting to have sex with Ms. Safi to another employee of Defendant's, Jennifer Smith. Ms. Safi also heard about the comment and told Plaintiff that she was uncomfortable with what Ms. Stone had said about her, and expressed her belief that, if Ms. Stone was male, she would have been fired by Defendant for making the inappropriate comment. Ms. Smith also reported to Plaintiff that Ms. Stone had told her that she wanted to have sex with Defendant's Regional Manager, Lori Meredith, and Ms. Hamilton, and that Ms. Stone told Ms. Smith in a sexually-suggestive manner that she is "good with her hands and fingers."

19.    Plaintiff was also shown a video taken when a group of Defendant's employees, including Ms. Stone, went out after work together. The video Plaintiff saw showed Ms. Stone touching Ms. Hamilton on her buttocks and putting her hands between her legs. Plaintiff was also told that Ms. Stone had grabbed Ms. Smith's breasts.

20.    On or before September 10, 2018, Plaintiff again engaged in the protected activity of participating in an investigation concerning sexual harassment and opposing sexual harassment by again reporting to Ms. Hamilton her reasonable belief that Ms. Stone's multiple, inappropriate comments and conduct of a sexual nature was illegal, given that she had received reports that

4

multiple employees were made uncomfortable as a result of Ms. Stone's conduct of a sexual nature.

21.     Ms. Hamilton initially reacted as if she did not believe Plaintiff.  More specifically, when Plaintiff escalated the reports of sexual harassment that she received from Erica Mora and Crystal Smith to Ms. Hamilton, Ms. Hamilton responded skeptically: "Why haven't they come and told me?"  Plaintiff told Ms. Hamilton that they did not feel comfortable reporting their concerns to Ms. Hamilton because she appeared to have a close friendship with Ms. Stone, so they reported their concerns to Plaintiff instead.  Ms. Hamilton told Plaintiff that she would speak to Ms. Mora and Ms. Smith about the comments Plaintiff had reported.

22.     Upon information and belief, on or about September 10, 2018, Ms. Hamilton spoke to Ms. Mora and Ms. Smith to ask about the reports of sexual harassment that Plaintiff had escalated to Ms. Hamilton.

23.     On or about September 10, 2018, Ms. Hamilton told Plaintiff that, while it was true that each employee had reported to Plaintiff the sexual comments that Plaintiff had escalated to Ms. Hamilton, each employee also purportedly said that they were not going to pursue complaints against Ms. Stone.  As a result, Ms. Hamilton reprimanded Plaintiff for purportedly "blowing the reports out of proportion."  Approximately 10 minutes after Ms. Hamilton reprimanded Plaintiff, Plaintiff observed Ms. Hamilton laughing with Ms. Stone in her office.

24.     Management's response to Plaintiff's protected activity contradicts its own complaint procedure, which states, in pertinent part:

> All employees have a responsibility for keeping the work environment free of discrimination and harassment.  Any employee who becomes aware of an incident of discrimination or harassment … must report it immediately to their supervisor, the Company's Human Resources representative, or the Company President.  When management becomes aware that harassment may have occurred, it

is obligated to take prompt and appropriate action, whether or not the victim wants the Company to do so. … The Company also prohibits retaliation against any employee who has reported harassment or who has participated or cooperated in the investigation of harassment complaints. … Employees may be assured that they will not be penalized in any way for reporting a harassment problem."

25.    On the evening of September 11, 2018, Plaintiff sent Ms. Hamilton a text message stating that she would provide a written notice of resignation due to Defendant's punitive response to Plaintiff following Company policy and escalating the third-party reports of sexual harassment.

26.    Early the next day, on or about September 12, 2018, Plaintiff told Ms. Hamilton that she could not afford to lose her employment, and that she had sent Ms. Hamilton the text message saying that she would give her two weeks' notice the night before because she was hurt that Defendant had not taken steps to correct the third-party complaints of sexual harassment she had reported, and instead reprimanded her for following Company policy and escalating the reports to Ms. Hamilton's attention.  Ms. Hamilton told Plaintiff not to worry about it, that she understood, and to "go back to doing what your were doing."  Ms. Hamilton did not address Plaintiff's demotion during this conversation, and Plaintiff went back to work believing that her employment with Defendant would continue in the same position.

27.    On or about September 12, 2018, Ms. Hamilton and Ms. Meredith met with Plaintiff and informed her that she was being demoted from her management position to a teacher, a significant reduction in responsibilities.  Ms. Hamilton and Ms. Meredith also told Plaintiff that she was being demoted because she had purportedly "blown the reports out of proportion."  Plaintiff was also told that, if she decided to accept Defendant's demotion, she would not be receiving her yearly raise.  At no time did either Ms. Hamilton or Ms. Meredith tell Plaintiff that

her demotion and Defendant's decision to deny her a raise were the result of any alleged performance issues other than having purportedly blown the third-party reports of sexual harassment out of proportion.  Plaintiff was noticeably upset and told Ms. Hamilton and Ms. Meredith that she had simply reported the concerns she received from other female employees, and that Defendant should be protecting its staff members from sexual harassment.

28.    Later that same day, on or about September 12, 2018, another employee of Defendant's, Graciela Monroy (Lead Teacher—Voyager 1 classroom), told Plaintiff that Ms. Stone had made another sexually inappropriate comment to Mrs. Monroy.  Specifically, Mrs. Monroy told Plaintiff that Ms. Stone had asked how long she had been married.  When Mrs. Monroy responded that it had been a long time, Ms. Stone told Mrs. Monroy that it was "time for me to make a lesbian out of you."

29.    Plaintiff encouraged Mrs. Monroy to report Ms. Stone's comment to Ms. Hamilton directly, because she told Mrs. Monroy that she had gotten in trouble for reporting Ms. Stone's sexually inappropriate comments.  After reporting Ms. Stone's comment to Ms. Hamilton, Mrs. Monroy approached Plaintiff and told her that she was right that Ms. Hamilton was out to get Plaintiff because Ms. Hamilton had responded to Mrs. Monroy's report of sexual harassment by asking if Plaintiff had "put her up to this?".  Mrs. Monroy said that Plaintiff had only encouraged her to tell Ms. Hamilton how Ms. Stone's comment made her feel, because Plaintiff did not want to get in trouble for reporting the comment herself.

30.    Later the same day, on or about September 12, 2018, Ms. Hamilton later told Plaintiff, "as a friend and not a boss, I know you're better than a teacher."  Plaintiff asked Ms. Hamilton, "Then why are they trying to get rid of me?"  Ms. Hamilton at first responded, "I don't

know why," and then, "I can't tell you why." Ms. Hamilton then told Plaintiff that she would be given two weeks' pay to leave and find another job "because what happened to you was wrong." Plaintiff was told that she would have to provide a written notice of resignation in order to receive the two weeks' pay.

31.    Plaintiff employment was terminated and/or constructively terminated by Defendant effective that same day, September 12, 2018. Ms. Hamilton told Plaintiff that she would receive two weeks of pay, but that Plaintiff needed to submit a written notice of resignation, get her personal belongings, and leave that day.

32.    Plaintiff's mother, Barbara Hernandez, also worked for Defendant as a teacher. When Ms. Hamilton told Plaintiff to get her personal belongings and leave on September 12, 2018, Ms. Hamilton also told Plaintiff to get her mother's personal belongings and that she would provide her with two weeks of pay as well to find other employment. Plaintiff understood this to mean that Defendant was terminating her mother's employment in further retaliation for Plaintiff's protected activity.

33.    Based on the foregoing, Defendant retaliated against Plaintiff for her participation in investigations of sexual harassment and her protected opposition to sexual harassment by demoting her and terminating and/or constructively terminating her employment, in addition to terminating and/or constructively terminating her mother's employment.

## CLAIM FOR RELIEF
**(Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*)**

34.    Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

35.    Defendant subjected Plaintiff to less favorable terms, conditions and privileges of

employment, including demoting her and subjecting her to a significant reduction in responsibilities, denying her a yearly raise, and terminating and/or constructively terminating her employment because she participated in an investigation of sexual harassment and made multiple complaints to management opposing sexual harassment.

36.     Defendant terminated Plaintiff's employment on or about September 12, 2018 for Plaintiff's above-described protected activity when Defendant subjected Plaintiff to retaliatory reprimands, a demotion, and told Plaintiff to submit a written notice of resignation in exchange for two weeks' pay to find other employment.

37.     In the alternative to finding that Defendant terminated Plaintiff's employment outright on or about September 12, 2018; Defendant's conduct in reprimanding and demoting Plaintiff, and denying her a yearly raise, in conjunction with Defendant's retaliatory conduct toward Plaintiff's mother, resulted in Plaintiff's involuntary termination from her employment, given that the objective conditions under which Plaintiff was required to work became so intolerable that she was compelled to resign.

38.     Defendant's conduct in subjecting Plaintiff to the above-described materially adverse employment actions is in violation of Title VII and had the effect of depriving Plaintiff of rights and privileges enjoyed by persons who have not engaged in activities protected by Title VII.

39.     Defendant's statutory violations were intentional.

40.     Defendant's statutory violations were done with malice and/or with reckless indifference to Plaintiff's federally protected rights.

41.     As a direct and proximate result of Defendant's above-described retaliatory actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering,

embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and order the following relief as allowed by law:

A.      Compensatory damages, including but not limited to those for garden variety emotional distress, inconvenience, and mental anguish;

B.      Back pay and benefits;

C.      Front pay and benefits;

D.      Punitive damages;

E.      Attorneys' fees and costs of this action, as permitted by law;

F.      Pre-judgment and post-judgment interest at the highest lawful rate; and

G.      Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 12th day of August 2019.

HKM EMPLOYMENT ATTORNEYS, LLP

By: _s/ Shelby Woods_____
        Claire E. Hunter
        Shelby Woods
        HKM Employment Attorneys, LLP
        730 17th Street, Suite 750

Denver, Colorado 80202
chunter@hkm.com
swoods@hkm.com
*Attorneys for Plaintiff*